K–LINE FARMS, INC., Appellee,

v.

WATERLOO BOARD OF REVIEW,
Appellant.

No. 61883.

Supreme Court of Iowa.

Feb. 21, 1979.

William S. Smith and Timothy J. Luce, of Smith & Kennedy, Waterloo, for appellant.

W. D. Sindlinger, of McCrindle, Bergstrom & Sindlinger, Cedar Falls, for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, McCORMICK, ALLBEE, and McGIVERIN, JJ.

UHLENHOPP, Justice.

This appeal involves the question of whether the trial court was right in sustaining a motion for summary judgment in a property tax case.

At the level of state law, Iowa uses a platting statute for controlling urban development. Ch. 409, Code 1977; see *Builders Land Co. v. Martens*, 255 Iowa 231, 122 N.W.2d 189. As stated in Note, 54 Iowa L.Rev. 1121, 1130:

The core of state statutory authority for municipal regulation of subdivisions is found in the State Platting Act. Directed at the subdivider, the statute requires every division of land into three or more parcels to be platted. . . .

Some concrete suggestions regarding the extent of control that can be exercised because of the platting requirement are spelled out by statute in Iowa. The alignment of streets must conform with existing streets and blocks, and the council may require a subdivider to install sidewalks, paving, sewers, water, gas, and electric utilities before the plat is approved.

Section 558.65 of the Code prohibits entry of plats on the official plat books of a county unless the plats are approved by the city council. The Note also states at 1133–1134:

Supplementing the provisions of Chapter 558, Chapter 409 provides the essential enforcement procedures for subdivision control. Section 409.2 seeks to protect the buyer by making the duty to file a plat a covenant of warranty. By this requirement of filing the purchaser is guaranteed clear title. Under Iowa law the seller is liable for any damages to the grantee arising from failure to comply with the statutes. Provision is also made for voiding any plat which does not carry the endorsement of the city council. Furthermore, failure of the county recorder or county auditor to abide by the mandates of the statute constitutes a misdemeanor in office. In addition to the above requirements, any person who disposes or offers to dispose of any lots before the plat has been acknowledged and recorded shall be fined fifty dollars per lot.

Perhaps the most widely used and practically important enforcement measure used in Iowa is the withholding of the building permit. The municipality can refuse to issue a building permit if a plat fails to conform with the subdivision regulations. Since the land without the building would be virtually useless, this technique generally ensures compliance with the subdivision regulations.

Another enforcement tool used in Iowa is the prohibition of public improvements or maintenance of existing improvements upon unapproved plats.

See also Kubicek & Kubicek, Selected Topics in Examination of Abstracts of Title, 26 Drake L.Rev. 1, 26; Tomain, Land Use Controls in Iowa, 27 Drake L.Rev. 254, 302 ("a municipality has extensive authority over the subdivider and may, in fact, control the design and layout of a particular plat for the purpose of insuring orderly growth and development").

Taxpayer K–Line Farms owned a substantial tract of unimproved land in Waterloo, Iowa. It recorded with the county recorder a deed of dedication and what is denominated a "final plat" of Timberline Patio Homes, a 9.06-acre parcel of the larger tract. The plat depicts streets and ten building sites, but the land is not subdivided in the usual way. The accompanying deed states, "The building locations and streets shown thereon are for illustrative purposes only and have no legal significance. Surveys of said addition or portions thereof may be hereafter filed showing portions thereof described as tracts or lots or otherwise and said tracts or lots as so described may be used for description purposes."

Prior to January 1, 1976, taxpayer commenced construction of a condominium toward the front of the platted land, on sites 1 and 10. After January 1, 1976, taxpayer renumbered that portion of the plat as Parcels A, B, B–1, and C. Apparently for illustrative purposes, a line has been drawn on the plat presented to us, separating those parcels from the rest of the plat which includes sites 2 to 9. The assessor regarded the entire plat as one parcel, and since it was improved by the condominium under construction he valued the parcel at $15,000 per acre, which was reduced by the board of review to $10,000 per acre. The surrounding land in taxpayer's larger tract is valued as agricultural land at $560 per acre.

Taxpayer appealed to district court as to the portion of the plat outside of the parcels labeled A, B, B–1, and C; the parties refer to that portion as "subject property." On taxpayer's motion for summary judgment, the district court held that the subject property is to be valued at $560 per acre. The

board of review appealed to this court and taxpayer cross-appealed.

■ I. Taxpayer first argues that the board cannot defeat the motion for summary judgment because the board's answers to requests for admissions and to interrogatories and its resistance to taxpayer's motion were not timely filed. The district court did not accept this argument, nor do we.

■ To be sure, a motion for summary judgment may fail because of the showing of the opposing party, but it may also fail because the showing under the motion itself is insufficient to warrant summary judgment. *Sherwood v. Nissen*, 179 N.W.2d 336, 338 (Iowa) ("Frequently the question on motions for summary judgment is whether the showing in resistance to the motion is adequate. . . . Here, however, the question is whether the showing in support of the motion was sufficient in the first place."). The determinative question under this record is whether taxpayer's initial showing is sufficient to entitle it to summary judgment against the board, even assuming answers favorable to taxpayer on the request for admissions and on the interrogatories and disregarding the resistance.

■ II. Taxpayer is trying to bring itself within § 409.48 of the Code, a provision for special tax treatment in chapter 409. The trial court held that the section applies. Chapter 409 contains a number of platting requirements. Section 409.4, for example, provides:

The plat of any addition to any city or subdivision of any part or parcel of lands lying within or adjacent to any city shall be divided by streets into blocks, and such blocks and streets shall conform as nearly as practicable to the size of blocks and the widths of streets therein, and shall be extensions of the existing system of streets.

Section 409.48, on which taxpayer relies, provides:

When any plat is *made, filed and recorded* by the proprietor or owners *under the provisions of this chapter*, the individual lots contained therein shall not be

assessed in excess of the total assessment of the land as acreage or unimproved property for a period of three years after the recording of said plat, or until such time as the lots are actually improved with permanent construction upon and within the boundaries of the individual lot or lots whichever period is shorter. When an individual lot has been improved with permanent construction, it shall then be assessed for taxation as provided in chapters 428 and 441.

The provisions of this section shall have no effect upon special assessment tax levies. (Italics added.)

Taxpayer's motion for summary judgment presents two problems. One is that the platted tract was not legally divided into individual lots as of January 1, 1976. At that time the plat depicted streets and ten building sites but the deed stated, "The building locations and streets shown thereon are for illustrative purposes only and *have no legal significance*." (Italics added.) Since the building sites and streets had no legal significance, the plat was of one area, as the board contends. Section 409.48 does not cover that situation. A landowner cannot record what legally amounts to a blank plat and have the advantage of § 409.48. That section states, "When any plat is made, filed and recorded by the proprietor or owners under the provisions of this chapter, the individual lots *contained therein* shall not be assessed", etc. (Italics added.)

The parties may wish to introduce evidence at trial on this issue, but certainly taxpayer, who made the motion, is not entitled to summary judgment upon this record *on the basis of § 409.48.*

■ The other problem is whether the plat is a valid one *under chapter 409.* The special tax treatment under § 409.48 is available if a plat is "made, filed and recorded by the proprietor or owners under the provisions of this chapter . . . ." To be "made" under chapter 409, the plat must conform to that chapter's mandates. Special tax treatment predicated on a nonconforming plat would not only go against this language of § 409.48, it would erode the

purpose of chapter 409 to control urban development. Under the scanty record here, a court cannot adjudicate affirmatively that the plat conforms to chapter 409. At trial the parties may also wish to introduce evidence on this issue, but unresolved fact questions exist at this time which prevent summary judgment.

III. In its appeal to district court, taxpayer alleged that the valuation of the subject property is excessive for three reasons: (1) it is too high when compared with valuations of like property in the district; (2) it is more than the value authorized by law; and (3) it is erroneous because § 409.48 applies. We reverse on the board's appeal and return the case to district court for proceedings in accordance with the Rules of Civil Procedure.

REVERSED.