No. 54,312
and
No. 54,329
(Consolidated)

STATE OF KANSAS, *Appellant,* v. GREGORY R. FISHER, JOHN F. GEISLER, STEVEN E. KINDER and JAMES P. RAY, JR., *Appellees.*

(658 P.2d 1021)

Opinion filed February 19, 1983.

*John C. Laman,* assistant county attorney, argued the cause, and *C. L. Laman,* county attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for appellant.

*Robert A. Walsh,* of Concordia, argued the cause, and *David D. Swenson, Thomas M. Tuggle* and *Larry S. Vernon,* of Concordia, were with him on the brief for appellees.

The opinion of the court was delivered by

McFARLAND, J.: The district court dismissed the burglary charges in these consolidated cases on the basis that a hog pen is not a "structure" within the purview of the burglary statute, K.S.A. 21-3715. The State appeals from said determination.

On January 1 and 2, 1982, hogs owned by Robert A. Collins and located in a rural area of Cloud County were shot by intruders and then removed from their pens. Various charges stemming from the two incidents, including burglary, were filed against the defendants herein, Gregory R. Fisher, John F. Geisler, Steven E. Kinder and James P. Ray, Jr. Shortly after the preliminary hearing and the filing of the informations, the question was raised whether the two hog pens which were entered were legally capable of being burglarized—that is, were they "structures" within the contemplation of the burglary statute, K.S.A. 21-3715? The trial court answered the question in the negative and this appeal by the State resulted. No trial has been had of the remaining charges as the same were dismissed by the State pending the outcome of this appeal.

K.S.A. 21-3715 provides:

"Burglary is knowingly and without authority entering into or remaining within any building, mobile home, tent *or other structure,* or any motor vehicle,

aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony or theft therein." (Emphasis supplied.)

The two hog pens may be described as follows. Each has a concrete floor, but no roof. The pens are constructed of 36″ by 120″ prefabricated metal hog panels which are similar to fencing, but rigid. The panels are attached to steel fence posts. Hog pen #1 is a rectangle measuring 32′ by 16′ and is enclosed on three sides by panels and on the fourth side by a barn. Hog pen #2 is a rectangle measuring 36′ by 30′ and all four sides are panels except for a small shed in one corner. The barn and shed are not involved in the burglary charges. Therefore, the legal issue is the same as to both hog pens.

The crux of the issue before us is whether a broad or restrictive meaning should be ascribed to the term "or other structure" as found in K.S.A. 21-3715.

"Structure," used as a noun, is a word with several interrelated refinements of meaning. This is reflected in Webster's New Collegiate Dictionary 1154-55 (1977) which includes the following definitions and illustrations thereof:

"*structure 2 a:* something (as a building) that is constructed *b:* something arranged in a definite pattern of organization [a rigid totalitarian structure] . . . *4 a:* the arrangement of particles or parts in a substance or body [soil structure] [molecular structure] *b:* arrangement or interrelation of parts as dominated by the general character of the whole [economic structure] . . ."

Black's Law Dictionary 1276 (5th ed. 1979) defines "structure" as follows:

"STRUCTURE. Any construction, or any production or piece of work artifically built up or composed of parts joined together in some definite manner. That which is built or constructed; an edifice or building of any kind."

In the broad sense urged by the State, virtually anything capable of being constructed is a structure and hence legally capable of being burglarized. We do not agree.

The hog pens in question are essentially small areas enclosed by three-foot-high fences. Obviously, the only persons to whom such low sides would constitute actual physical barriers are young children. The applicable rules of statutory construction do not support the inclusion of fenced areas such as these hog pens within the term "structure" as used in K.S.A. 21-3715.

It is a fundamental rule penal statutes must be strictly construed in favor of the persons sought to be subjected to their operation. The rule of strict construction simply means ordinary

words are to be given their ordinary meanings. Such a statute should not be read so as to add to or to subtract from that which is readily found therein. *State v. Conner,* 4 Kan. App. 2d 207, 209, 603 P.2d 1038 (1979), *rev. denied,* 227 Kan. 927 (1980); *State v. Floyd,* 218 Kan. 764, 766, 544 P.2d 1380 (1976); *Esters v. State,* 1 Kan. App. 2d 503, Syl. ¶ 3, 571 P.2d 32 (1977).

Further, open-air, free-standing, low-fenced hog pens are not *ejusdem generis* with buildings, mobile homes, or tents as provided in K.S.A. 21-3715. In *State v. Prather,* 79 Kan. 513, 100 Pac. 57 (1909), the court discussed *ejusdem generis* as follows:

"The doctrine of *ejusdem generis* is applied in all cases where there is doubt as to the intention of the legislature, and, as a rule of statutory construction, is stated to be that where general words follow particular ones in a statute the general words will be limited in their meaning, or restricted to things of like kind and nature with those specified. This rule, however, always yields to the manifest legislative intention. (*The State v. Bancroft,* 22 Kan. 170, 207 [1879].)" 79 Kan. at 516.

Whereas fences are not mentioned in the burglary statute, K.S.A. 21-3715, fences and structures are both referred to in the criminal trespass statute, K.S.A. 21-3721. The relationship of the two terms as utilized therein is, we believe, significant and the statute is reproduced in relevant part as follows:

"21-3721. **Criminal Trespass.** *Criminal trespass is entering or remaining* upon or *in any* land, *structure,* vehicle, aircraft or watercraft by a person who knows he or she is not authorized or privileged to do so, *and:*

. . . .

"(b) *such premises or property* are posted in a manner reasonably likely to come to the attention of intruders, or *are locked* or *fenced or otherwise enclosed,* or shut or secured against passage or entry." (Emphasis supplied.)

In *State v. Williams,* 220 Kan. 610, 556 P.2d 184 (1976), the notice requirement of K.S.A. 21-3721(b) was discussed as follows:

"The alternative notice requirement (b) relates to forms of actual and constructive notice by which an ordinarily prudent person is advised or should realize he is entering or has entered the premises or property of another. This includes the posting of signs in, on or around the property. In the alternative the state may prove the premises or property on which the trespass occurred was fenced or otherwise enclosed. *If a person must enter through a fence or other enclosure to reach* lands, *structures,* vehicles, aircraft, or watercraft he is at least constructively notified or should realize he is not authorized or privileged to do so without permission. *Fences and enclosures indicate the boundaries between properties.*" 220 Kan. at 614. (Emphasis supplied.)

K.S.A. 21-3721 has been amended since the *Williams* case in particulars not relevant herein.

It is quite clear that an otherwise open area enclosed by a low fence is not a structure within the meaning of the criminal trespass statute, K.S.A. 21-3721. The crimes of burglary and criminal trespass are, of course, closely related. This relationship was discussed in *Williams* as follows:

"In the Kansas criminal trespass statute the properties sought to be protected are land, structures, vehicles, aircraft or watercraft. Except for land these are some of the same properties named in the Kansas burglary statute. Both statutes relate to a knowing and unauthorized entry or remaining within the properties. However, the burglary statute has for its purpose the protection of the property and the occupants from a felony or theft therein, while the trespass statute has for its purpose merely a restriction against the unauthorized entry or remaining within the property." 220 Kan. at 613-14.

It would be rather incongruous if such a three-foot-high fenced enclosure were to be held a structure for purposes of the burglary statute when the same is clearly not a structure for purposes of the criminal trespass statute.

No Kansas cases have been found where penetration of low-fenced enclosures, such as the hog pens herein, have been held to constitute burglary. The following are examples of the traditional type of buildings and structures which have previously been held to have been capable of being burglarized: a granary, which has a floor, door and roof, *State v. Groning,* 33 Kan. 18, 5 Pac. 446 (1885); *State v. Martin,* 223 Kan. 78, 573 P.2d 576 (1977); a buggy house, *State v. Garrison,* 52 Kan. 180, 34 Pac. 751 (1893); a chicken house, which has walls, doors and a roof, *State v. Poole,* 65 Kan. 713, 70 Pac. 637 (1902); a cave which has a door attached to it and is used for the storage of vegetables and victuals, *State v. Sanders,* 81 Kan. 836, 106 Pac. 1029 (1910); and a movable freight car, *State v. Mooney,* 93 Kan. 353, 144 Pac. 228 (1914).

## CONCLUSION

The State's position that an open-air, free-standing, low-fenced hog pen comes within the word "structure" as used in K.S.A. 21-3715, is contrary to a review of ordinary definitions of "structure," not supported by authority, and inconsistent with rules of statutory construction, such as *ejusdem generis.* In reaching this conclusion we do not categorically state that no hog pen is capable of being burglarized. There may well be hog pens which

are integral parts of structures or are, themselves, of sufficient design to be structures. Rather, we simply conclude the hog pens in question are not structures within the purview of K.S.A. 21-3715. The district court, accordingly, did not err in dismissing the burglary charges herein.

The order of dismissal is affirmed.